BANTER v. McNEIL. See Case No. 966.

## Case No. 967.

### BANTZ v. ELSAS et al.

[1 Ban. & A. 351;[1] 6 O. G. 117.]

Circuit Court, S. D. Ohio. June Term, 1874.

PATENTS FOR INVENTIONS—REISSUE OF LETTERS—NEW MATTER.

1. Letters patent for an "Improvement in Boiler-Furnaces, for Burning Wet Fuel," reissued to Gideon Bantz, February 6, 1872, and extended for seven years from June 22, 1872, examined and sustained.

2. The fact of reissue, raises a presumption, that the invention, claimed in the original and reissued patents, are the same, and, that the reissued patent has not been extended beyond the original invention.

[Cited in Dederick v. Cassell, 9 Fed. 307.]

3. Dead chambers were shown in the drawings of the original patent, but were not referred to in the specification: Held, that it was competent to describe them, point out their functions, and claim them, in a reissue.

[In equity. Bill by Gideon Bantz against Jacob Elsas and others for infringement of patent No. 20,616. Decree for complainant.]

John E. Hatch and Fisher & Duncan, for complainant.

Jacob Schroder, for defendants.

SWING, District Judge. The bill in this case, alleges that the complainant was the original and first inventor of an "Improvement in Boiler-Furnaces for Burning Wet Fuel," for which he received a patent, June

---

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

22, 1858; that he surrendered said letters patent, February 6, 1872, and obtained new letters patent therefor, which were afterward extended for seven years from June 22, 1872. It further alleges, that he is the sole owner of said reissued and extended letters patent; that he has expended large sums of money, in making and vending the improvement, and making it profitable for himself, and useful to the public; that many persons have been licensed to use the same, with great advantage to the public; that the public have acknowledged and acquiesced in his rights to said improvement; and, that he will realize large gains and profits therefrom, if the infringements by defendants, shall be prevented; that the defendants, well knowing the premises, without license and in violation of the rights of complainant, did unlawfully make and use boiler-furnaces, made according to, and containing his patented invention, and are threatening to use and make the same, in large quantities. The bill then prays, that defendants may be compelled to account for, and pay over the profits of the infringement, and may be enjoined from making, vending, or in any wise using the patented improvement. The defendants answer: 1. Denying, generally, the allegation of the bill. 2. Denying, specially, the infringement. 3. Denying that complainant was the first and original inventor of the patented improvement, and setting up a prior use, by several persons named in the answer. They also seek to attack the validity of the reissued patent of the complainant: 1. By showing that the original patent was for a combination of all the elements described therein, as a combination, while the reissued patent is for those elements, separately, or, for a combination of a less number than the whole. 2. That the reissued patent contains a new element, which is not found in the original, to wit, the dead-chambers.

The patentee, in his specification, claims to have invented "a new and useful improvement in furnaces for burning wet fuel;" and then proceeds to give a description of the invention, and says:

"I do not claim a furnace for burning wet fuel, broadly, nor the use of a series of fire-places, connecting with the common flue, arranged between the furnace and boiler, as I am well aware this has been done before. Having thus described my invention, I claim:

"1. In a furnace for burning wet fuels, having two or more single fire-chambers, not arranged under the boiler, the combustion chamber or reservoir C, arranged above the top of said fire-chambers, and located directly under the front end of the boiler, essentially as described.

"2. The cyma-reversa bottom m n, of the combustion chamber or reservoir C, in combination with the narrow throats e, of the separate fire-chambers, and the narrow exit-flue o, of the bridge walls f, for the purpose essentially as described.

"3. In combination with the combustion chamber or reservoir C, arranged and located as described, I claim the side door or doors h', for the admission of atmospheric air, for the purpose described.

"4. In combination with a series of fire-chambers A, and the combustion chamber or reservoir C, located and arranged directly beneath the front end of the boiler, and above the crown of said fire-chamber, I claim a series of reverberatory-chambers D, provided with side-doors h, and a diving-flue E, at the rear end of the boiler, to hold the heat beneath the same throughout its entire length, and to arrest and deaden the sparks, as described.

"5. In a furnace for burning wet fuels, in which the fire-chambers are not arranged under the boiler, I claim the arrangement of the boiler upon the rear wall of the furnace, and the rear wall of the diving-flue E, for the purpose of obtaining the full advantage of the heat of the walls of the furnace, and of the diving-flue, as described.

"6. In a furnace for burning wet fuels, having a flat top, and supplied through openings therein, I claim the dead-chambers arranged between the floor and the arches of the fire-chambers, for the purpose of maintaining the top of the furnace cool for the workman, as described."

Complainant insists that respondents have infringed the first and third claims of this re-issued patent. But one expert has been examined, and his testimony shows, that the furnace of the respondents, embodies, substantially, the invention of the complainant, as set forth in the first claim of his patent. That, it is a furnace for burning wet fuel, having two single fire-chambers, not arranged under the boilers, and a combustion-chamber, or reservoir, arranged above the top of the fire-chambers, and located directly under the front of the boiler, in the same manner and for the same purpose as complainant's invention, and also that it embodies substantially complainant's invention, as set forth in the third claim of his patent, to wit: In combination with the combustion-chamber or reservoir, the side-door, for the like uses and purposes, as in complainant's furnace.

It is claimed, however, by respondents, that there is no infringement of either of these claims, because the combustion chamber or reservoir of the complainant, is one having a cyma-reversa bottom, with a narrow throat, whereas, the combustion chamber or reservoir of the respondents, has not the cyma-reversa bottom, but, has one which is flat, and set inclined, and has a wide throat, instead of a narrow one.

If, the first and third claims of the complainant, are to be confined strictly to a combustion-chamber or reservoir with a cyma-reversa bottom and a narrow throat, then, the respondents do not infringe.

I think, however, that the leading idea of the complainant, is found, in a combustion chamber or reservoir, arranged in its relations with the fire-chamber and boiler, for a particular purpose, rather than, in the particular form of the back or throat of such chamber or reservoir. It may be true, that he supposed the one described by him, was best adapted for the purpose for which it was designed, but, there can be no doubt, that the defendants' combustion-chamber occupies substantially the same relation to the fire-chambers and boiler that the complainant's does, and, is for, and accomplishes, the same purpose, in the same way. The only difference is, in the shape or form of the bottom and size of the throat, and it is not claimed that there is any difference in the principle of the two. If this be so, shall the respondents by a mere change of form, be permitted to use the complainant's invention? I think not.

As to the question of first and original invention, the testimony of Gideon Bantz, and (by stipulation), that of John Duvall and Gideon Bantz, Jr., shows, that the invention of the complainant, dates back as far as 1854, while the testimony of J. C. Baum, who claims to be the first and original inventor, only reaches back to 1856. True, Mr. Baum testifies, that, in 1858 or 1859, complainant acknowledged that he, Baum, was the author of the invention, but, this is positively denied by complainant, and it is not likely that such conversation did take place, when, as the testimony shows, complainant's invention was made two years before Baum claims to have invented it.

As to the patent of Thompson, there is nothing to show its nature or character, nor that the invention was of the same character as the complainant's. Besides, no such defence is set up in the answer; neither is there any testimony, establishing a prior use of such a furnace.

If the validity of the complainant's reissued patent, was properly put in issue, I cannot, for any of the reasons assigned by the learned counsel for respondents, conclude, that such reissued patent is invalid.

1. The presumptions of the law are all in favor of its validity. The very fact of reissue raises a presumption, that the inventions, claimed in the original and reissued patent, are the same, and the presumptions of the law, are, that the complainant has acted rightly, and has not extended the reissued patent beyond the original invention.

2. But, aside from this, by a comparison of the original with the reissue, I do not find it extended beyond what I include in a fair and reasonable construction of the original. I do not think the original patent is for a combination; it is not, as described in the patent, specifications or claims, and, if it be not for a combination, the patentee had a right to a reissue for any of its valuable elements, separately or together.

3. But it is said the reissued patent em-

braces an element not within the original patent, to wit, the dead-chamber. It is true, that nowhere in the specification of the original patent, are these dead-chambers spoken of, or their functions described, but they are clearly shown in the drawings accompanying the specification, and the reissue does nothing more than describe them and point out their functions. This is certainly not going beyond what is shown in the original patent.

Decree for complainant.

[NOTE. Patent No. 20,616, was granted to G. Bantz, June 22, 1858; reissued February 6, 1872, (No. 4,731.) For another case involving this patent, see Bantz v. Frantz, 105 U. S. 160.]